IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHESTER S. AND EMILIA T. GARBER, | ) ) ) | No. CV-F-04-6040 REC |
| | ) ) | ORDER DENYING MOTIONS FOR SANCTIONS (Docs. 21 and 27) |
| Appellant, | ) ) | AND OPINION AFFIRMING DECISION OF BANKRUPTCY COURT |
| vs. | ) ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | ) ) ) | |
| Appellee. | ) ) ) | |

Debtors and appellants Chester and Emilia Garber (hereinafter referred to as the Garbers) have appealed three orders issued by the United States Bankruptcy Court (Judge Rimel) on June 19, 2003, December 17, 2003, and January 14, 2004 wherein the Bankruptcy Court granted an administrative expense claim filed by National Union Fire Insurance Co. of Pittsburgh, PA (hereinafter referred to as National Union), granting National Union's claim for attorneys' fees incurred in National Union's action against the Garbers in this court, No. CV-F-94-5414 REC

1

(hereinafter referred to as the Fraudulent Conveyance Action).[1]

**A.   Garbers' Objections to Excerpts of Record Submitted by National Union**.

The Garbers object to National Union's submission of and reference to items 1 through 4 (NU00001-NU000028) set forth in National Union's Excerpt of Record filed on May 4, 2005.  The documents to which the Garbers object are:

> 1.  Complaint to Set Aside Fraudulent Conveyance; Demand for Jury Trial (U.S.D.C. Doc. No. 1);
>
> 2.  National Union's Opposition to Motion to Approve Stipulation and Agreement in Connection with Pending Federal District Court Action (Bank. Doc. No. 15);
>
> 3.  Order on Motion for Relief from the Automatic Stay to Proceed with Litigation (Bank. Doc. No. 33);
>
> 4.  Amended Judgment (U.S.D.C. Doc. No. 269)

In so objecting, the Garbers assert: "Only Appellants designated the record in connection with this appeal.  Appellee had the right to do so but did not.  Appellees cannot do so now."

Rule 8006, Bankruptcy Rules, provides in pertinent part:

> Within 10 days after filing the notice of appeal as provided by Rule 8001(a) ..., the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented.

---

[1] Both the Garbers and National Union filed motions for sanctions in connection with this appeal.  However, at oral argument, National Union denied that it had filed such a motion and the Garbers did not address their motion for sanctions. Accordingly, the court hereby denies both motions for sanctions.

2

1
2
3

        Within 10 days after the service of the appellant's statement the appellee may filed and serve on the appellant a designation of additional items to be included in the record on appeal ....

4     The Garbers' Notice of Appeal was filed in the Bankruptcy

5   Court on January 16, 2005.  The Garbers filed a designation of

6   record setting forth specific documents to be included on the

7   appeal on January 22, 2005.  The Garbers filed a designation of

8   record setting forth transcripts of hearings to be included on

9   the appeal on February 11, 2005.  No designation of record was

10  filed by National Union.

11     The court's research could no locate a decision specifically

12  addressing the remedy to the appellant because of the appellee's

13  failure to timely comply with Rule 8006.  Most of the cases

14  involve the appellant's failure to comply.  However, from the

15  court's review of the cases involving the appellant's failure to

16  timely comply, the reviewing court's decision regarding remedy is

17  a matter of discretion.  Clearly, there is no prejudice to the

18  Garbers if the court allows the contested items to be considered

19  on this appeal.  The documents at issue are documents of which

20  this court may take judicial notice and are documents with

21  respect to which the Garbers are familiar.  Furthermore, the

22  Garbers describe no prejudice to them if the court considers the

23  documents.

24     If the court denies the Garbers' objections to these

25  documents, the Garbers "designate and submit as a proposed

26  excerpt of record", the transcript of the proceeding in the

1  Bankruptcy Court on June 3, 1996 involving National Union's

2  motion for relief from the automatic stay, which hearing resulted

3  in the "Order on Motion for Relief from the Automatic Stay to

4  Proceed with Litigation (Bank. Doc. No. 33)" provided by National

5  Union as Item No. 3 in its Excerpt of Record.

6      Given National Union's untimely designation of record, the

7  court grants the Garbers' request to include this transcript as

8  part of the record on appeal.

9      **B.   BACKGROUND**.

10     During the 1980's, National Union issued a surety bond

11 guaranteeing payment by the Garbers on a note used to purchase an

12 interest in a limited partnership.  After the Garbers defaulted

13 on the note, National Union made payments on their behalf.

14 National Union filed an action against the Garbers for

15 reimbursement that was eventually transferred to this court and

16 prosecuted as National Union v. Garber, No. CV-F-88-088 REC

17 (hereinafter referred to as the Bond Case).  In 1992, this court

18 entered summary judgment for National Union in the amount of

19 $51,031.40 in principal, $30,906.91 in interest accrued as of

20 November 15, 1991, and awarded attorneys' fees in the amount of

21 $69,389.08.  The court's judgment and award were affirmed by the

22 Ninth Circuit and the Ninth Circuit awarded National Union's

23 attorneys' fees on appeal in the amount of $4,310.  National

24 Union filed abstracts of judgment in Fresno and Monterey

25 Counties.  In May, 1993, National Union conducted a debtor's

26 examination of the Garbers.  National Union learned for the first

time that the Garbers had either pledged or transferred all of their assets, both business and personal, to Emilia Ting Garber's sister, Betty Ting, and that some of their assets were encumbered by liens in favor of Betty Ting, including property in Pacific Grove, which was jointly owned by the Garbers and Betty Ting.  On April 29, 1994, National Union filed the Fraudulent Conveyance Action in this court.  The Garbers filed a Counterclaim and Third Party Complaint against National Union and others.  On September 23, 1994, the Garbers filed a petition for bankruptcy.  Ellen Briones was appointed trustee of the Garbers estate.

On February 3, 1995, National Union's attorneys sent a letter to Ms. Briones, offering to serve as special counsel for the purpose of prosecuting a complaint to deny the discharge and to prosecute a complaint to avoid the transfers and further stating:

> If we are appointed as special counsel our fees will be paid by National Union.  Out of the recovery National Union would be reimbursed as an administrative expense pursuant to 11 U.S.C. 503.

> We believe that this would be a positive step for the Trustee and the creditors of this estate because we understand that the assets transferred have a value significantly in excess of the judgment claim of our client. After payment of the fees and judgment claim there would, we are told, be substantial sums to be administered by the estate.

Ms. Briones declined National Union's offer.  Instead, Ms. Briones and the Garbers and Betty Ting filed a "Stipulation and Agreement in Connection with Pending Federal District Court

Action", the purpose of which was "(1) to permit the Debtors to prosecute their counter-claim against NU, all for the benefit for this estate, and (2) to abate any prosecution of the action to set aside a fraudulent conveyance against Ting pending prosecution of the counter-claim."  Although opposed by National Union, the Stipulation was approved by the Bankruptcy Court on May 15, 1995.  This court thereupon heard National Union's motions to dismiss the Garbers Counterclaim and Third Party Complaint in the Fraudulent Conveyance Action.  This court's dismissal of the Counterclaim and Third Party Complaint was affirmed on appeal.  National Union v. Garber, 1998 WL 30810 (9th Cir. 1998).

In March, 1996, the Trustee requested that National Union prosecute the Fraudulent Conveyance Action as special counsel for the benefit of the estate.  According to the Declaration of Richard Russell, counsel for National Union's previous counsel, D'Amato and Lynch, the Trustee's proposal that National Union act as special counsel was conditioned upon National Union waiving its secured claim and its rights under the abstracts of judgment, thereby resulting in National Union having an unsecured claim. By letter dated April 19, 1996,  National Union declined the Trustee's proposal because National Union "does not see that there would be any benefit to it."

On June 18, 1996, the Bankruptcy Court granted relief from the automatic stay in the Garbers' bankruptcy.  The Garbers appealed that order to this court in No. CV-F-96-5858 and then to

1  the Ninth Circuit, where this court's ruling was affirmed.

2  Garber v. National Union, 2000 WL 674749 (9th Cir. 2000).  In the

3  meantime, National Union proceeded to obtain summary judgment in

4  the Fraudulent Conveyance Action.

5      The property in Pacific Grove was sold for $1,310,000 in

6  2001.  The Garbers' bankruptcy estate received approximately

7  $500,000 net proceeds.  From that amount National Union's

8  $218,095.75 judgment lien was satisfied.

9      On September 11, 2002, National Union filed an

10  administrative expense claim in the amount of $359,185.36 for

11  reimbursement of attorneys' fees and costs associated with

12  recovering assets and returning them to the estate.

13      The Trustee filed a "Motion Objecting to Administrative

14  Claim Filed by National Union Fire Insurance Company".

15      A hearing on the Trustee's motion was held before Judge

16  Rimel on April 16, 2003.  On June 19, 2003, Judge Rimel issued

17  Findings of Fact and Conclusions of Law with regard to the

18  Trustee's motion, denying the Trustee's motion but reducing

19  National Union's administrative claim (hereinafter referred to as

20  the June 19 Order).  In the June 19 Order, Judge Rimel rejected

21  National Union's contention that the order granting National

22  Union's request for relief from the automatic stay constituted

23  prior judicial authorization within the meaning of 11 U.S.C. §

24  503(b)(3)(B), holding in pertinent part: "Section 503 is not

25  mentioned in the relief from stay order entered by Judge Ford.

26  Had the order contemplated authorization under § 503(b), it would

have said so."  The June 19 Order then addressed National Union's

request that "extraordinary circumstances exist such that a 'nunc

pro tunc' order should be entered retroactively authorizing its

pursuit of the fraudulent transfer action."  In granting National

Union's motion, the June 19 Order rules in pertinent part:

> Applicants who have failed to obtain prior
> court approval for their services to a
> bankruptcy estate may seek retroactive court
> approval.  In re THC Financial Corp., 837
> F.2d 389, 392 (9th Cir. 1987).  Retroactive
> approval, however, is limited only to
> applicants who can establish: (1) a
> satisfactory explanation for their failure to
> obtain prior court approval; and (2) that the
> services significantly benefitted the
> bankruptcy estate.  Id.  See also In re Emco
> Enterprises, Inc., 94 B.R. 184
> (Bankr.E.D.Cal. 1988).  Although THC
> Financial Corp. and Emco Enterprises arose in
> the context of § 327 or its predecessor, the
> reasoning of those cases is equally
> applicable to requests for compensation under
> § 503.  Therefore, the court will analyze
> whether National Union has provided a
> satisfactory explanation for its failure to
> obtain prior court approval and whether its
> services significantly benefitted the
> bankruptcy estate.
>
> It is impossible for this court to second
> guess at this late date the reasoning that
> impelled the prior chapter 7 trustee to
> pursue the crossclaim along with the debtor
> rather than to pursue the fraudulent transfer
> action with National Union.  In retrospect,
> it was the wrong decision.  Whether it was a
> decision that a prudent chapter 7 trustee
> should have made at the time is impossible,
> based on the record before the court, to
> determine.  Nonetheless, National Union did
> pursue the fraudulent transfer action for the
> benefit of the estate and, under the
> circumstances, the court finds that the
> former trustee's declining to pursue the
> action is a satisfactory explanation.  The
> record is replete with evidence of the

hostility between the Garbers and National Union.  The prior chapter 7 trustee chose to throw in her lot with the Garbers in the district court litigation.  This is satisfactory explanation for National Union's not obtaining prior court approval.

National Union did provide a substantial benefit to the estate through the recovery in the fraudulent transfer action.  Absent National Union's efforts, this would indeed be a no asset case, and no creditors would recover anything.

The Garbers and the Trustee filed a Motion for Reconsideration and New Trial.  The Motion for Reconsideration and New Trial was heard by Judge Rimel on September 10, 2003.  On December 17, 2003, Judge Rimel issued the following Findings of Fact and Conclusions of Law Regarding Motion of Debtors for New Trial and Reconsideration of Order (hereinafter referred to as the December 17 Order), ruling in pertinent part:

The third ground for the motion is that the court's ruling constitutes a manifest error of law.  According to the debtors, the court used the wrong standard for retroactive approval of employment of attorneys.  The debtors assert that the court did not utilize the exceptional circumstances standard required by the Ninth Circuit.  Instead, the debtors argue that the court held that a 'satisfactory explanation' for failure to obtain court authorization was enough.

...

Manifest Error of Law.

...

The court's findings of fact and conclusions of law appropriately stated the standard for approval of fees to applicants who failed to obtain prior court approval for their services.  As the Ninth Circuit has stated:

'In this circuit, a retroactive award of fees for services rendered without court approval is not necessarily barred. [citation omitted] A court may exercise its discretion to award fees for valuable but unauthorized services. [citation omitted] ... [S]uch awards should be limited to exceptional circumstances where an applicant can show both a satisfactory explanation for the failure to receive prior judicial approval and that he or she has benefitted the bankrupt estate in some significant manner.'

In re THC Financial Corp., 837 F.2d 389, 392 (9th Cir. 1988). This is the standard that the court utilized.

Another relevant case is In re Gutterman, 239 B.R. 828 (Bankr.N.D.Cal. 1999). In that case, the United States Trustee had moved for reconsideration of an order of the bankruptcy court allowing employment of counsel on a nunc pro tunc basis. The court denied the United States Trustee's motion. The trustee in that case had retained Kornfield. Through inadvertence, Kornfield had failed to file his application to be employed. Kornfield provided valuable services to the bankruptcy estate. The bankruptcy court, in denying the United States Trustee's motion for reconsideration, found it important to analyze whether the estate had suffered any prejudice as a result of the delay.

'Based on [Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380 (1993), the Court concludes that, in determining whether a professional applying for nunc pro tunc employment has provided a satisfactory explanation for its delay, the Court may consider not just the reason for the delay but also the prejudice (or lack thereof) to the estate as a result of the delay.'

10

1    Gutterman, at 831.

2    Here, the failure of National Union to obtain
     approval to pursue the fraudulent transfer
3    action resulted in no prejudice to the
     estate.
4
     In examining whether exceptional
5    circumstances exist, it is appropriate for
     the court to consider the equities involved.
6    In re Atkine, 69 F.3d 970, 973 (9th Cir.
     1995).
7
     The debtors' argument here focuses on the
8    fact that the court's findings of fact and
     conclusions of law specifically analyze the
9    two prongs of the THC Financial Corp. test -
     a satisfactory explanation for failure to
10   obtain prior court approval and that the
     services significantly benefitted the
11   bankruptcy estate.  It is these two prongs
     that must be satisfied for exceptional
12   circumstances to be shown.  Also relevant, as
     expressed in the Gutterman and Atkins
13   decisions, are the factors of whether any
     prejudice arose from failure to seek prior
14   court approval and the other equities in the
     case.  Here, no prejudice arose from National
15   Union's failure to seek court approval, and
     the equities argue in favor of National Union
16   being allowed an administrative expense
     claim.
17
     The Garbers again filed a Motion for Reconsideration and New
18
Trial which was heard by Judge Rimel on January 14, 2004.  At the
19
January 14, 2004 hearing, the following occurred:
20
     MR. HERTZ: ... Your Honor, I really regret
21   having to file a second motion like this, but
     as you understand - what I understand your
22   decision on December 17th is that it varies
     from the decision previously made.
23
     And the argument that there was a lack of
24   prejudice to the estate in the failure of
     National Union to seek authority was never
25   argued by anyone, and there is no evidence.
     At least that's our position.
26

11

1      But briefly, Your Honor, you start off with
2  503(b)(2).  It requires authorization in
   advance of services.  And that's clear, it's
3  a failure to obtain the authorization in
   advance.

4      The applicant has the burden of showing the
   exceptional circumstances which excuses pre-
5  service authorization.  Acceptable services
   can be shown by showing substantial benefits
6  to the estate plus - and a satisfactory
   explanation.  That satisfactory explanation
7  must be given by the applicant, not by the
   Court.

8
       **Atkins**, 69 F.3d 970, 974 says 'to establish
9  the presence of exceptional circumstances,
   professionals seeking retroactive approval
10 must satisfy two requirements.  They must
   satisfactorily explain their failure to
11 receive prior judicial approval.'

12     The applicant has never given an explanation
   for their failure to comply with the court
13 back in 1996, 1997.  That the trustee and
   National Union were at loggerheads was
14 suggested by the Court in its first opinion.
   It was not suggested by the other party.  And
15 there's no evidence that National Union was
   dissuaded from following the law by anything
16 that the trustee did or did not do.

17     And, in fact, the time record says - and
   National Union seems to suggest in its last
18 argument before the court that it made a
   considered decision not to apply, for
19 whatever purposes it may have had for doing
   so, so there's no explanation.

20
       Well, the court apparently considered that
21 argument and spent a considerable amount of
   time before issuing its December 17th
22 opinion.

23     And in that December 17th opinion, the Court
   does not really address the issue which we
24 raised.  And the Court says, in effect, here
   the failure of National Union to obtain
25 approval to pursue the fraudulent transfer
   action resulted in no prejudice to the
26 estate.  And the Court relies on a case,

1    which although we cited it, we did not cite
it for that purpose.

2

3    Secondly, nobody argued lack of prejudice.
the Court simply finds that there was no
prejudice.  Now, there's nothing in the

4    opinion on December 17th that points to
actual facts that show there was no

5    prejudice.

6    And we have pointed out, paragraphs 24 to 26
of our motion, that there was likely to have

7    been prejudice.  In fact, we don't have the
burden of showing lack of prejudice.  We

8    don't have to show prejudice.  We don't have
to show anything.  We're simply showing that

9    there's likely to have been prejudice, and
there's no evidence of lack of prejudice.

10

11    So the burden is not on us.  The burden is on
the other party.

12    And Mr. Reddie, in his response, does not
show any lack of prejudice.  He doesn't even

13    argue about it, as far as I can tell.

14    So that is our position, Your Honor.  We
don't see how the Court can arrive at the

15    conclusion that it did, and, therefore, it's
a manifest error of law, there being no

16    evidence whatsoever on either of these
critical issues.

17

    THE COURT: Thank you.  Mr. Reddie?

18

19    MR. REDDIE: Your Honor, I didn't hear
anything new that wasn't in his papers, and I

    don't have anything to add at this point.

20

21    THE COURT: Thank you.  I'm going to rule now.
This is a motion that was brought on an

    emergency basis for reconsideration because,

22    as Mr. Hertz observed, the time - the second
motion for reconsideration does not toll the

23    period to appeal.

24    I've read the motion, I've read the arguments
in support of the motion, I've read the

25    opposition, I've reread both findings of fact
and conclusions of law, and I'm not persuaded

26    that there was a manifest error of law, and

13

1    I'm not persuaded that anything new is argued
     here.
2
     I will say that to the extent Mr. Hertz is
3    concerned that lack of prejudice is raised
     for the first time here, my ruling does not
4    require the lack of prejudice statement to
     stand on its own.  I don't think there is any
5    evidence of any prejudice to the estate, but
     that's not the - is not the primary reason
6    why I made my ruling.  It's an add-on reason,
     and I think the findings bear that out.
7
     I think if the parties - if the party who is
8    aggrieved here is unhappy with the ruling, as
     the Garbers obviously are, they will have to
9    take that to the next court.

10   In any event, your motion is denied.

11   **C.   <u>STANDARD OF REVIEW</u>.**

12       A bankruptcy court's entry of a <u>nunc pro tunc</u> approval is

13   reviewed for abuse of discretion or erroneous application of law.

14   <u>In re Atkins</u>, 69 F.3d 970, 973 (9ᵗʰ Cir. 1995).  An abuse of

15   discretion is "a plain error, discretion exercised to an end not

16   justified by the evidence, a judgment that is clearly against the

17   logic and effect of the facts as are found."  <u>Int'l Jensen, Inc.</u>

18   <u>V. Metrosound U.S.A., Inc.</u>, 4 F.3d 819, 822 (9ᵗʰ Cir. 1993).

19   When reviewing for abuse of discretion, the reviewing court

20   cannot reverse unless if has a "'definite and firm conviction

21   that the court below committed a clear error of judgment in the

22   conclusion it reached ....'"  <u>DaRonde v. Shirley (In re Shirley)</u>,

23   134 B.R. 940, 943 (9ᵗʰ Cir.BAP 1992).   As long as findings are

24   plausible in light of the record viewed in its entirety, a

25   reviewing court may not reverse even if convinced it would have

26   reached a different result.  <u>Wardley Int'l Bank, Inc. v. Nasipit</u>

<u>Bay Vessel</u>, 841 F.2d 259, 262 n.1 (9th Cir. 1988).

   D.   **Merits of Appeal**.

   Allowance of administrative expense claims are governed by 11 U.S.C. § 503.  Section 503 provides in pertinent part:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
>
> (b) After notice and a hearing, there shall be allowed administrative expenses ... including -
>
> ...
>
>    (3) the actual, necessary expenses ... incurred by -
>
> ...
>
>       (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
>
> ...

An administrative expense allowed under Section 503 entitles the holder to priority in distribution.  The burden of proving an entitlement to an administrative expense is on the claimant. While the Bankruptcy Court has broad discretion to grant administrative expense requests, it is required to construe § 503(b) narrowly to keep costs to a minimum and preserve the limited assets of the bankruptcy estate for the benefit of unsecured creditors.  <u>In re Central Idaho Forest Products</u>, 317 B.R. 150, 155 (Bankr.Idaho 2004).

   1.   **National Union's Claim That It Obtained Prior Court**

**Approval**.

As noted, National Union argued to the Bankruptcy Court that it's motion for relief from the automatic stay constituted approval by the Bankruptcy Court to proceed with the Fraudulent Conveyance Action for the benefit of the estate.  In the June 19, 2003 Order, Judge Rimel rejected National Union's position.

In its opposition brief to this appeal, National Union argues that it obtained prior court approval, contending:

> In light of the fact that National Union was proceeding on its own, and the trustee was not prepared to pursue claims against the Garbers and Ting, that request for relief from stay clearly constituted a request for court approval to proceed with an action that would benefit the estate ... In this instance, National Union's noticed motion seeking relief from the stay so that it could pursue an action that would benefit the estate clearly conforms to the spirit and intent of the requirement for court approval. Given the statute's silence on the method of gaining court approval, it is certainly within the Court's discretion to find that National Union's motion for relief from stay fulfilled that requirement.

Although no objection to the court's consideration of this issue is made by the Garbers, it is noted that National Union did not file a notice of appeal from Judge Rimel's decision nor did National Union file a cross-appeal.  From the court's research, this court has the discretion to consider this issue notwithstanding the absence of a notice of appeal by National Union.  See In re Hessco Industries, Inc., 295 B.R. 372, 376-377 (9th Cir.BAP 2003), citing Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1297-1298 (9th Cir. 1999).  In

16

<u>Mendocino Environmental Center</u>, the Ninth Circuit ruled that a notice of cross-appeal is a rule of practice that can be waived at the court's discretion, rather than a jurisdictional requirement.  192 F.3d at 1298.  The Ninth Circuit further ruled:

> In deciding whether to allow a cross-appeal that has not been properly noticed, courts have considered factors such as the interrelatedness of the issues on appeal and cross-appeal (particularly whether they involve the same parties), whether a notice of cross-appeal was merely late or not filed at all, whether the nature of the district court opinion should have put the appellee on notice of the need to file a cross-appeal, [and] the extent of any prejudice to the appellant caused by the absence of notice
> . . . .

192 F.3d at 1299.  Looking to these factors, the court will consider the issue raised by National Union.  The parties are the same, the issues are interrelated, National Union could not have filed an appeal (except concerning the amount of the administrative expense claim allowed), the Garbers have not objected to the court's consideration of the issue and, because the Garbers were able to respond to the issue in their reply brief, will not be prejudiced by the court's review of the issue.

The court affirm Judge Rimel's ruling.  The court has reviewed the record in connection with National Union's motion for relief from the stay to proceed with the Fraudulent Conveyance Action.  Although the court is not provided with a copy of National Union's motion for relief from stay, the court is provided with the transcript of the hearing on the motion for relief from stay.  There is no discussion at that hearing that

17

1   National Union was seeking relief from stay in order to proceed

2   with the Fraudulent Conveyance Action for the benefit of the

3   estate and there is no discussion of Section 503.  At that

4   hearing on June 3, 1996, National Union contended as follows:

5           MR. WALTER: ... As I stated what we are
   seeking here today is relief from the

6   automatic stay so that pending litigation can
   go forward.  As the record will reflect it is

7   actually a fairly common fact pattern,
   National Union brought an action against the

8   debtor seeking to establish a claim and was
   granted a judgment by the district court some

9   years ago.  Thereafter, National Union
   learned how the certain transfers from the

10  debtor to the sister of Mrs. Garber.
   National Union thereafter filed a fraudulent

11  transfer suit in the district court.  The
   debtors filed Chapter 7 and thereafter

12  National Union filed a second 523 and 727
   actions.  Then there was a lot of procedural

13  wrangling, discovery disputes, a motion for
   summary judgment was filed by the debtors and

14  denied.  At the same time the debtors filed a
   cross-complaint against National Union in the

15  fraudulent transfer action that was pending
   in the district court.  National Union moved

16  to dismiss that cross-complaint, the cross-
   complaint was dismissed and the court, the

17  district court withdrew the reference of the
   523 and 727 actions to the district court

18  where it now sits.  The Garbers have appealed
   that matter on a number of different grounds.

19  Basically we are taking the position that
   there is no stay and that we can go to the

20  district court and seek to have the matter
   set for trial.  The debtors have on several

21  occasions raised questions and insisted that
   we have to get relief from stay first.  So

22  out of an abundance of caution we brought
   this motion seeking relief to the extent that

23  it is needed to allow the district court to
   proceed.

24  ...

25          MR. WALTER: Your Honor, just so there is no

26  confusion, there are two actions.

18

1       MR. HERTZ: Yes, and this is the problem.

2       MR. WALTER: There is the withdrawn matter the
reference has been withdrawn as to the 523
3       and 727 action but there is still pending the
fraudulent transfer action as to which there
4       may well be a stay.  I am only asking for
permission to proceed with both -
5

       THE COURT: Okay.  I didn't understand that.
6
       MR.  HERTZ: Okay.  Now we have a problem.
7
       THE COURT: What is the problem?
8
       MR. HERTZ: The problem is that I don't want
9       them to go ahead with a case which was
withdrawn improperly and combined it with a
10     case that is a pre-petition case in which I
wasn't even involved.  That is the problem.
11     If the Court rejects - I think, Your Honor,
let me say that I think a fair resolve of
12     this case, a fair result since we didn't even
have the opportunity to argue the withdrawal
13     reference before Judge Coyle because we were
never even given notice.  I was not given
14     notice at any time.

15     THE COURT: It's irrelevant.  He withdrew it.

16     MR. HERTZ: That's fine.

17     THE COURT: Your complaint is with the
district court.
18
       MR. HERTZ: And that is exactly it and I agree
19     with that totally.  I think what these folks
should do is go to the district court and ask
20     the district court to solve the problem if
there is a problem.
21
       THE COURT: And does he need relief from stay
22     to do that?

23     MR. HERTZ: No.  We can go to the district
court, we can make a motion for withdrawal
24     with whatever is necessary so that he can get
relief from the district court, the district
25     court judge is perfectly capable of entering
a relief from stay order if he wants to, but
26     at least we get an opportunity at that time

1        to argue which we never had a chance to do.
And I think that is a fair result.

2        Otherwise, you are getting half of a case
here without really understanding all the

3        things that are going on and I just think
that that is a fair way for this to be

4        handled.

5        THE COURT: Mr. Walter?

6        MR. WALTER: ... This is not really a matter
of fairness.  This is an attempt by the

7        debtor to obtain a stay pending appeal
without going through that process.  What I

8        think would be a fair way to proceed here is
for Your Honor to lift the stay to the extent

9        that there is a stay, let us make the motion
in the district court to set the matter for

10       trial and they can raise any arguments that
they wish there, but -

11

12       THE COURT: Why would you need permission to
set the matter for trial there if it is

13       already there?

14       MR. WALTER: Because there is a fraudulent
transfer action as to which no stay has been

15       lifted yet.  We were suing the debtor before
filing and there has never been any relief

16       from stay as to that bit of litigation.

17       THE COURT: But the district court gave you
that and combine the cases so that it does

18       not have to be partly heard here, which is
not going to be, and partly heard in the

19       district court.

20       MR. WALTER: And we are just asking Your Honor
to confirm that to the extent that there is a

21       stay the district court can determine the
outcome of the case.

22       THE COURT: Okay.  My order is that there is
no stay here because the case has been

23       withdrawn.

24       MR. WALTER: As to any litigation -

25       THE COURT: As to any of these matters.

26 By Order filed on June 18, 1996, Judge Ford ruled in pertinent

part:

> 1.  There is no stay which precludes Movant from proceeding to trial on its adversary proceeding to deny Debtors' discharge or for denial of dischargeability (Adv. Proc. No. 94-1361) nor as to the Complaint to Avoid Fraudulent Transfers (Case No. CV-F-94-5414-REC), each of which is pending in the United States District Court.  The reference of the adversary proceeding has been withdrawn and the Complaint was originally commenced in the U.S. District Court.

> 2.  The Motion be, and hereby is, granted to the extent required to proceed with the said litigation.

As the Garbers contend, there is no evidence that a request for authorization under Section 503(b)(3)(B) was made to Judge Ford and there is no indication in the record from which such an intent can be inferred.  Therefore,  Judge Rimel's denial of National Union's administrative expenses claim on this ground was not error.

**2.   The Garbers' Claim That National Union Failed to Provide Evidence Explaining It's Failure to Obtain Timely Approval.**

The Garbers argue that Judge Rimel's authorization of National Union's administrative expense claim <u>nunc pro tunc</u> is error because National Union failed to provide any evidence establishing the reason for National Union's failure to seek prior approval from the Bankruptcy Court.

In <u>In re THC Financial Corp.</u>, 837 F.2d 389, 392 (9th Cir. 1988), the Ninth Circuit held:

> In this circuit, a retroactive award of fees

21

for services rendered without court approval
is not necessarily barred ... A court may
exercise its discretion to award fees for
valuable but unauthorized services ....

The district court concluded correctly that
such awards should be limited to exceptional
circumstances where an applicant can show
both a satisfactory explanation for the
failure to receive prior judicial approval
and that he or she has benefitted the
bankrupt estate in some significant manner.

In In re Atkins, supra, 69 F.3d at 974, the Ninth Circuit again
ruled:

To establish the presence of exceptional
circumstances, professionals seeking
retroactive approval must satisfy two
requirements: they must (1) satisfactorily
explain their failure to receive prior
judicial approval; and (2) demonstrate that
their services benefitted the bankrupt estate
in some significant manner.

The Garbers argue that Judge Rimel abused her discretion in
approving National Union's administrative expense claim because
no evidence has been provided by National Union establishing a
satisfactory reason for failing to obtain prior judicial approval
for the attorneys' fees incurred in the Fraudulent Conveyance
Action.  The Garbers are objecting that there is no evidence by
way of declaration from counsel for National Union which actually
states that National Union did not seek prior approval under
Section 503 because the Trustee rejected National Union's offer
to act as special counsel to litigate the Fraudulent Conveyance
Action, elected to litigate with the Garbers' their Counterclaim
and Third Party Complaint, and, after the Garbers' Counterclaim
and Third Party Complaint were dismissed and that dismissal

1  affirmed on appeal, conditioned the Trustee's request that

2  National Union act as special counsel on National Union waiving

3  its secured claim and its rights under the abstracts of judgment,

4  thereby resulting in National Union having an unsecured claim.

5  Although all of this evidence was before Judge Rimel, the Garbers

6  essentially contend that Judge Rimel's discretion does not extend

7  to inferring the reason for National Union's failure to seek

8  prior approval from this evidence.  In other words, absent a

9  declaration or contemporaneous explanation, the Garbers argue

10  that Judge Rimel's finding that National Union provided a

11  satisfactory explanation for the failure to seek prior approval

12  is unsupported by any evidence.  The Garbers argue that National

13  Union "has presented no admissible evidence that it either

14  considered and rejected proceeding under Section 503(b)(3)(B) or

15  failed to consider it."

16      The Garbers are contending that the Bankruptcy Court is not

17  permitted to draw inferences from the evidence presented to it.

18  The court is aware of no authority precluding a court from

19  drawing reasonable inferences from the evidence and, in

20  exercising discretion, reaching a conclusion based on those

21  inferences.  As Judge Rimel ruled in three instances, she was

22  satisfied with the explanation of the reason why National Union

23  did not seek prior court approval.  Consequently, even though

24  there was no "smoking gun", so to speak, the evidence considered

25  by the Bankruptcy Court supports the inference that she drew from

26  it.

1    The Garbers further argue that Judge Rimel abused her

2    discretion when, in denying their first motion for

3    reconsideration, she "raised (on its own and without any points

4    and authorities or statement from NU) the case of In re

5    Gutterman, 239 B.R. 828 (Bankr.N.D.Cal. 1999)."  The Garbers

6    admit that they cited In re Gutterman to the Bankruptcy Court in

7    their first motion for reconsideration but assert that the case

8    was cited in a footnote with a group of cases discussing the

9    tests for "exceptional circumstances".  The Garbers complain

10   that, because neither National Union nor they suggested that

11   "lack of prejudice" to the estate excuses the party requesting

12   nunc pro tunc approval from "providing any explanation".  The

13   Garbers contend:

14           Because the Court raised the theory of 'no
             prejudice' on its own, neither Debtors nor
15           the Trustee had any opportunity to refute it.
             The only evidence on either side is the
16           evidence incidentally in the record.  The
             lower court erred in proceeding on a theory
17           which no party even discussed without
             allowing either party to adduce evidence in
18           response.  In doing so, the court abused any
             discretion it might have to consider its own
19           theory.

20   Because Judge Rimel's reference to Gutterman was made in

21   response to the citation of the case to her by the Garbers, Judge

22   Rimel cannot be faulted for reviewing the case and considering

23   it.  More importantly, as Judge Rimel notes in denying the

24   Garbers' second motion for reconsideration, her reference to

25   Gutterman was made in the context of denying the Garbers' first

26   motion for reconsideration.  In other words, Judge Rimel did not

grant National Union's application for administrative expenses
nunc pro tunc because Judge Rimel sua sponte concluded that the
estate was not prejudiced.  Rather, as she explained in denying
the second motion for reconsideration, the lack of prejudice was
just another reason why her initial ruling would not be
reconsidered, i.e., she was standing by her original ruling.
Therefore, the Garbers' contention that Judge Rimel abused her
discretion by relying sua sponte on a "theory" of lack of
prejudice without giving the Garbers the opportunity to contest
such a finding is not a basis for reversal of Judge Rimel's
decision to grant National Union's application because that
finding was not a basis for granting the application.  Although
the Garbers argue at length that National Union's failure to
obtain prior approval for the administrative expenses prejudiced
the estate, those arguments are not relevant to the resolution of
this appeal because, as noted, Judge Rimel made the finding in
denying a motion for reconsideration.[2]

    ACCORDINGLY:

    1.  The parties' respective motions for sanctions are
denied.

---

    [2]At oral argument before this court, the Garbers referred the
court to In re Morad, 328 B.R. 264 (1st Cir. BAP 2005).  The Garbers
appeared to argue, based on Morad, that National Union's claim for
administrative expenses should be denied because the Fraudulent
Conveyance Action was commenced before the Garbers filed the
bankruptcy petition.  Because In re Morad was cited for the first
time at oral argument and because the Garbers' argument based on In
re Morad was not previously made to the Bankruptcy Court or to this
court, the court does not consider it in resolving this appeal.

1      2.   Appellant's appeal is denied and the rulings of the

2  Bankruptcy Court affirmed.

3      IT IS SO ORDERED.

4  **Dated:  January 20, 2006**          **/s/ Robert E. Coyle**

   668554                        UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26